2023 IL App (2d) 210537-U
Nos. 2-21-0537 & 2-22-0097 cons.
Order filed August 2, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MICHAEL A. PRATE, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 20-L-505 |
| | ) | |
| ZURICH AMERICAN INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | Honorable |
| | ) | Luis A. Berrones, |
| (Christopher Saternus, Third-Party Appellant). | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice McLaren and Justice Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not abuse its discretion in imposing sanctions pursuant to Illinois Supreme Court Rule 137; and the court's oral findings, which were incorporated by reference into its written order, sufficiently set forth the reasons and basis for imposing the sanctions.

¶ 2    Appellants Michael A. Prate and attorney Christopher Saternus appeal from the order of the circuit court of Lake County imposing sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). For the following reasons, we affirm.

¶ 3                          I. BACKGROUND

¶ 4    The record reveals the following facts. Prate is the former sole owner of two Illinois corporations that were involved in the roofing industry, namely Michael A. Prate, Inc. (MAP) and Prate Installations, Inc. (PI). MAP purchased an annual workers' compensation insurance policy from Zurich each year from 2001 and 2007, with the policies being in place continuously from March 1, 2001, through March 1, 2008. Each policy contained an incurred loss retrospective endorsement, whereby the premiums were to be adjusted based on MAP's incurred losses during the policy period.

¶ 5    In October 2007, Zurich sent MAP an invoice for $701,095 in principal due under the insurance program. In June 2008, Prate, on behalf of MAP, signed a promissory note for the full principal amount due, plus 5% annual interest on any unpaid balance. Zurich later demanded payment, and, in December 2008, a stand-still agreement was entered into between Zurich and MAP to allow them additional time to negotiate. Zurich eventually terminated the stand-still agreement, and, in October 2010, filed an arbitration demand as contemplated in a document associated with the policies, namely "Incurred Loss Retrospective Rating Agreement, Terms and Conditions" (Terms and Conditions). On May 19, 2011, MAP commenced a lawsuit against Zurich in Lake County, and Zurich responded on November 3, 2011, by moving to compel arbitration of much of that action. On February 15, 2012, MAP and Zurich agreed to dismiss the Lake County action, and the payment dispute moved forward in arbitration.

¶ 6    On April 29, 2013, an arbitration panel found in favor of Zurich and awarded it the amount due under the promissory note, as well as the amount of an additional invoice dated October 2008 and prejudgment interest. In total, the arbitration panel entered a final award in favor of Zurich in the amount of $1,331,304.18. Less than three weeks later, in May 2013, Prate assigned ownership of MAP and PI to creditors because MAP lacked sufficient assets to pay the arbitration award. On

May 20, 2013, Zurich filed a petition to confirm the award in the circuit court of Cook County, case No. 2013 CH 13073. On July 23, 2013, the court issued a judgment order confirming the arbitration award in Zurich's favor. MAP did not appeal the judgment. On December 4, 2013, Zurich filed a complaint against both MAP and Prate, individually, in Cook County case No. 2013 L 13756, seeking to reverse, pursuant to the Uniform Fraudulent Transfer Act (UFTA) (740 ILCS 160/1 *et seq.* (West 2012)) various "shareholder distribution[s]" MAP issued to Prate between April and December of 2010. That matter was subsequently consolidated with case No. 2013 CH 13073. During those proceedings, PI and MAP were involuntarily dissolved in November 2013 and August 2014, respectively. On September 15, 2015, in the consolidated Cook County action, the parties entered into a stipulated judgment in favor of Zurich and against Prate, individually, in the amount of $350,900. The judgment amount represented the sum of the fraudulent transfers from MAP to Prate, and which Prate admitted were intended to hinder or thwart Zurich's collection of the arbitration award. The remaining claims were dismissed without prejudice.

¶ 7    On July 30, 2020, Prate, in his personal capacity, filed a three-count verified complaint against Zurich sounding in fraud and seeking $10 million in damages. The complaint was prepared and signed by Saternus, his counsel. The complaint raised various allegations concerning the circumstances that led to MAP's execution of the promissory note, as well as challenged the source of Zurich's right to demand arbitration, as had occurred in October 2010. Appellants alleged that the amount of the October 2007 insurance invoice was not supported by "understandable documentation," as well as that an insurance auditor retained by MAP had concluded Zurich overcharged MAP on several policies and failed to notify MAP that it perhaps qualified for certain contractors' credits. They further alleged that Zurich sent its collections attorney to Prate's office "to threaten and intimidate" him until he signed the promissory note.

¶ 8    Concerning whether the underlying dispute should have been subject to arbitration, appellants alleged that Zurich fraudulently secured an undue right to arbitrate the dispute against MAP by including the arbitration clause in the Terms and Conditions and failing to file that document with the Illinois Department of Insurance (Department), which appellants alleged was required by law.  Appellants asserted that Zurich did not file the Terms and Conditions with the Department because it feared the Department would reject it, "since arbitration is not a general Illinois procedure or method."  Appellants further alleged that, during each of the policy years, Zurich presented the Terms and Conditions to Prate to sign "months after the insurance policy was effective" and informed him that his signature was required.  Thus, appellants contended that Prate signed the Terms and Conditions each year out of fear that he would have no workers' compensation insurance if he refused.

¶ 9    On October 27, 2020, Zurich filed a motion to dismiss the complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)), which allows for combined motions under sections 2-615 and 2-619 (*id*. §§ 2-615, 2-619).  Zurich argued four grounds for dismissal.  First, it asserted that the complaint was subject to dismissal pursuant to section 2-619(a)(5) of the Code for failure to commence the action within the five-year statute of limitations applicable to fraud claims.  See 735 ILCS 5/13-205 (West 2018); *CitiMortgage, Inc. v. Parille*, 2016 IL App (2d) 150286, ¶ 43.  Zurich highlighted that all of the facts alleged in the complaint were alleged to have occurred between seven to 20 years earlier and, thus, no alleged fact had occurred within the five-year statute of limitations.  Second, Zurich argued that the complaint was barred by the doctrine of *res judicata* (see 735 ILCS 5/2-619(a)(4)).  It noted that, in 2011, MAP filed suit against Zurich in Lake County, but that an agreed order was eventually entered in February 2021 dismissing the action in order to allow the payment dispute to be

arbitrated. Further, Zurich asserted that many of the claims in the complaint were expressly rejected in the arbitration proceedings, such as whether the dispute was subject to arbitration in the first place, the validity of the promissory note, and the allegation that Zurich's counsel coerced MAP to sign the promissory note. As for the remaining claims, Zurich asserted that nothing prevented those claims from being raised in the prior proceedings. Third, Zurich argued that Prate, as a former owner, lacked standing to bring any of the claims on behalf of either MAP or PI. Fourth, Zurich argued that dismissal was warranted under section 2-615 of the Code, because the complaint failed to satisfy the heightened pleading standard applicable to state a claim for fraud.

¶ 10 On December 9, 2020, appellants filed a response to the motion to dismiss. There, they characterized the complaint as seeking damages related to Zurich's "failure to compute premiums correctly" and its refusal of "Prate's repeated demands that the premiums be corrected." They contended that, as a result, MAP was forced to arbitrate the dispute, where "Zurich knew that the cards were stacked against Prate."[1] In other words, Zurich "compel[ed] an arbitration to which it was not entitled." Appellants then proceeded to address each of the bases raised by Zurich in its motion to dismiss. They pointed to the "discovery rule" to argue that the complaint was not time barred because Prate "only recently," in January 2020, learned that Zurich did not file the Terms and Conditions with the Department following several requests under the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq*. (West 2018)) that was initiated by an insurance auditor that

---

[1] Appellants later elaborated, in their response to Zurich's motion for Rule 137 sanctions, that "Zurich knew that an [a]rbitration panel would favor the party bringing work to the arbitrators on a regular basis, [and] Zurich knew that a jury of Lake County citizens would treat it less favorably."

Prate engaged in June 2019. Moreover, appellants asserted that it would have been unreasonable to discover earlier that Zurich did not file the document, pointing to the failure of Prate's prior counsel to raise the issue in the 2011 Lake County action. Concerning *res judicata*, appellants asserted that neither MAP nor Prate raised the issue of Zurich's failure to file the Terms and Conditions with the Department in any prior preceding, and they disputed that the non-filing could have been reasonably discovered any earlier. Although it is not entirely clear, it appears that appellants, in their response to the motion to dismiss, conceded that MAP voluntarily participated in the arbitration proceedings, but they further replied that "MAP was unaware of the fraud of Zurich and therefore could not make the argument then that [they] can make now."

¶ 11    Regarding Zurich's argument that there was a lack of standing, appellants asserted that Prate was the then-current owner of MAP and PI, and that they were "ready to amend [the] complaint to include MAP and PI as co-plaintiffs." They asserted that "Zurich's fraud was aimed at MAP and PI, but it hit Mr. Prate." Last, appellants disputed that the complaint failed to state a valid claim of fraud, although they conceded that the complaint was not as "artful" as it could have been. Nevertheless, they maintained that the complaint advanced

> "a claim never before pursued in prior litigation, a claim only recently discovered, a claim made by the sole owner of MAP and PI, that Zurich fraudulently deceived MAP and PI, to the significant harm of Mr. Prate, by presenting a policy and Terms and Conditions where the Terms and Conditions were not filed with the [Department]."

¶ 12    On January 13, 2021, Zurich filed a reply in support of its motion to dismiss. It contended that appellants' argument that the claims were timely was defeated by the constructive knowledge aspect of the discovery rule, in that the claims were discoverable 19 years prior—when MAP first agreed to the Terms and Conditions. Zurich also asserted that the issue of whether the Terms and

Conditions were filed with the Department could have been investigated at any point after it was executed, including during the arbitration itself or the subsequent Cook County proceedings confirming the award. Regarding appellants' argument that the "fraudulent failure to file" claim was not barred by *res judicata*, Zurich stressed that the doctrine bars not only the claims that were previously brought, but also those that could have been brought. Zurich also argued that it was irrelevant whether Prate continued to, at that time, own MAP and PI, because corporate claims belong to the corporation, not its ownership.

¶ 13 Appellants were granted leave to file a surreply. There, they disputed that Prate should have known that the Terms and Conditions were not filed because, according to appellants, such filings are not a matter of public record and "only an insurance expert would know how to file a FOIA request with the Department." Concerning the statute of limitations, appellants argued, for the first time, that the complaint was timely under section 13-207 of the Code (735 ILCS 5/13-207 (West 2020)). They contended that the complaint (filed in June 2020), was timely because it was filed within five years of the entry of the stipulated judgment (entered in September 2015) in the consolidated Cook County action.[2] They further stated that, as a result of the stipulated judgment, Prate was "caused *** to pay Zurich *** at least $120,000." Concerning Zurich's *res judicata* argument, appellants contested that there was an identity of cause of action, pointing out that

---

[2] Appellants elaborated in their surreply in opposition to Zurich's motion for Rule 137 sanctions that "Prate's personal damages began when he started making payments on the stipulated settlement dated 9/10/15 [*sic*] from the fraudulent transfer case," and that "the instant case was filed July 20, 2020." Appellants reasoned, therefore, that "[a]ll of Mr. Prate's damages came within five years."

Zurich's alleged failure to file the Terms and Conditions was "an operative fact [that was] not present in the history of litigation between Zurich and MAP," because "Prate alleges one fact that was never pleaded before." Finally, regarding standing, they argued that Prate personally suffered harm "because of Zurich's [UFTA] case against Prate, which case arose out of the confirmed arbitration award." They reasoned that, "[h]ad there been no arbitration, Mr. Prate would never have had to defend Zurich's [UFTA] claim and suffer harm therefrom."

¶ 14 On February 16, 2021, Zurich filed a surresponse. It argued that section 13-207 of the Code had no application because the statute applied only to counterclaims and setoffs—of which the complaint was neither. It also denied that insurance filings with the Department are not public records under FOIA, and it pointed out that, under FOIA, the records in the custody or possession of a public body, such as the Department, are presumed to be available for public inspection. See 5 ILCS 140/1.2 (West 2020). Concerning its *res judicata* argument, Zurich reiterated that the doctrine bars not only the claims that were previously decided, but also those claims that could have been raised, but were not. In Zurich's view, appellants' argument concerning the non-filing of the Terms and Conditions was merely a new argument to attack the arbitration award that was confirmed via a final judgment in July 2013, which predated the filing of the complaint by seven years. It also reiterated its argument that Prate lacked standing.

¶ 15 On February 24, 2021, after hearing oral argument, the circuit court granted Zurich's motion and dismissed the complaint with prejudice based on two grounds. First, the court reasoned that the complaint was barred by *res judicata* because the case "ended many years ago," and the complaint raised only issues that could have been previously litigated or, in fact, were previously litigated. It also rejected the argument that Zurich's alleged non-filing of the Terms and Conditions was new evidence, as the non-filing of the document was a circumstance that "existed and was

discoverable." For the second ground, the court concluded that the claims were barred by the statute of limitations because, as argued by Zurich, the complaint contained no facts that were alleged to have occurred within five years of its filing. Finally, the court commented that there was "a standing issue" because, as best it could tell, the complaint purported to raise derivative claims on behalf of MAP, and "not Mr. Prate's claim[s]." It stated, however, that a lack of standing did not necessarily require dismissal with prejudice, but that the complaint would nevertheless be barred by *res judicata* and the statute of limitations—even with a proper plaintiff. Appellants moved for reconsideration, which the court denied on August 17, 2021.

¶ 16     On March 25, 2021, Zurich filed a motion for sanctions against appellants pursuant to Rule 137. It asserted that the dismissed claims were brought in bad faith and represented the culmination of a "decade-long pattern of harassment." As in its motion to dismiss, Zurich argued that the complaint was barred by the statute of limitations, standing, and *res judicata*—all of which should have been known by appellants. Zurich also argued that the complaint included assertions of fact that Prate and his counsel knew were false. It pointed to count II, which alleged that, in 2008, Zurich's collections attorney threatened and intimidated Prate until he signed the promissory note. Zurich pointed out that Prate made the same assertion in his August 2014 answer to Zurich's complaint under the UFTA, but that he later retracted the claim after he realized Zurich did not retain the attorney who allegedly coerced him until after the note was executed.[3] Specifically, it noted that Prate, in April 2015, filed an amended answer that removed the allegations of duress and the allegations concerning the attorney's involvement in the execution of the promissory note.

_____

[3]In answer to Zurich's UFTA claims, Prate acknowledged that Prate executed a promissory note for $701,095, but that he "did so only under duress from *** counsel for Plaintiff."

¶ 17    In its sanctions motion, Zurich also informed the court that, after the complaint was dismissed with prejudice, certain actions undertaken by Saternus demonstrated an intent to continue litigating these "long-resolved" issues.  It detailed that, in the days following the dismissal, Saternus contacted Zurich seeking proof that Zurich had filed the Terms and Conditions with the Department.  Zurich's counsel also received several phone calls from an individual purporting to be a television producer and seeking to discuss the case.  Zurich explained that, while the instant proceedings were ongoing, Prate informed Zurich's counsel that he had a television producer friend who was interested in the case and who was in negotiations with a film studio to produce the story.

¶ 18    On June 9, 2021, appellants filed a response to Zurich's motion for sanctions, wherein they denied that the complaint contained facts that were knowingly false, and they emphasized that Rule 137 is not meant to penalize litigants or their attorneys merely because they were unsuccessful in the litigation.

¶ 19    On September 21, 2021, following oral argument, the Court granted Zurich's motion for Rule 137 sanctions.  The court prefaced its ruling by stating that it did not consider any matters that occurred outside of the court proceedings, "[e]ven though they may be harassing or causing issues with [Zurich] or [its] counsel."  The court then explained its decision as follows:

> "I'm basing my rulings on the pleadings, the motion to dismiss with the exhibits that I have reviewed, [and] the briefs that were accompanying the motion for sanctions. And the Court finds that the motion for sanctions is well grounded.  I don't think that there is any legal or factual basis to deal with the issue of the statute of limitations, *res judicata*[,] or the standing issue.  There is no factual basis.
>
> If the Court remembers correctly, part of the argument was that you avoid the

statute of limitations based on 735 ILCS 5/13-207, which is something that applies only to counterclaims. That was the justification for this [complaint] initially and that shows the thinking and the analysis and the lack of research and really vigorous vetting of the facts of this case and the applicable law to this case.

Despite the posture of this case, I mean, there was still persistence with respect to standing and there were no allegations that Mr. Prate has standing in this matter.

I'm going to grant the motion for sanctions."

¶ 20    On December 15, 2021, the circuit court entered an order awarding Zurich its attorney fees in the amount of $130,183.64 jointly and severally against appellants.

¶ 21    This timely appeal followed.

¶ 22                                II. ANALYSIS

¶ 23    On appeal, appellants argue that the circuit court abused its discretion in awarding sanctions because: (1) they were not required to anticipate Zurich's affirmative defenses of the statute of limitations, the doctrine of *res judicata*, and standing in order to avoid sanctions; and (2) the court's findings regarding the reasons for its imposition of sanctions were not sufficiently specific and therefore failed to comport with Rule 137.

¶ 24    At the outset, it is necessary to clarify the scope of this appeal, because two notices of appeal were filed in this case. Prate filed the first notice of appeal on September 14, 2021, seeking review of the circuit court's ruling dismissing the complaint and later denying reconsideration of that ruling. We docketed the appeal as No. 2-21-0537. Appellants filed a second notice of appeal on March 23, 2022, seeking review of the court's orders imposing Rule 137 sanctions and thereafter denying reconsideration. We docketed that appeal as No. 2-22-0097. We consolidated the appeals for briefing, argument, and decision on April 20, 2022, which was before any briefs

were filed in either appeal. Appellants, in their opening brief, acknowledge both notices of appeal, but they make no argument that the court erred in granting Zurich's motion to dismiss, and they do not substantively argue in favor of the merits of the complaint. Instead, they expressly confine their arguments to addressing "only the issues [of] Rule 137 sanctions and the associated attorney's [*sic*] fees awarded." Prate therefore affirmatively waives any argument related to the propriety of court's decision to dismiss the complaint, and we need not consider it. See Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) (requiring that the appellant's brief contain "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on," and providing that "[p]oints not argued are forfeited"). Having clarified that only the court's imposition of Rule 137 sanctions is at issue in this appeal, we proceed to the merits.

¶ 25    Illinois Supreme Court Rule 137 allows the circuit court to impose sanctions on a party or their attorney for filing a pleading, motion, or other document that is not well-grounded in fact, is not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, or where it is interposed for an improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of the litigation. "The purpose of Rule 137 is to prevent the filing of false and frivolous lawsuits." *Sanchez v. City of Chicago*, 352 Ill. App. 3d 1015, 1020 (2004). See also *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217 (2007) ("The purpose of Rule 137 is to prevent parties from abusing the judicial process by imposing sanctions on litigants who file vexatious and harassing actions based upon unsupported allegations of fact or law"). The rule is not meant to punish litigants or their attorneys merely because they were zealous, yet unsuccessful in the litigation. *Peterson v. Randhava*, 313 Ill. App. 3d 1, 7 (2000). See also *Polsky v. BDO Seidman*, 293 Ill. App. 3d 414, 428 (a court "should not

impose sanctions on a party who presents objectively reasonable arguments for his position, regardless of whether the arguments are deemed to be unpersuasive or incorrect"). Rule 137 is penal in nature and must be strictly construed, and courts should reserve sanctions for the most egregious cases. *Patton v. Lee*, 406 Ill. App. 3d 195, 202 (2010). The party seeking to impose sanctions under Rule 137 bears the burden of establishing a violation of the rule. *Yassin v. Certified Grocers of Illinois, Inc.*, 133 Ill. 2d 458, 467 (1990). In evaluating whether sanctions are warranted under Rule 137, trial courts utilize an objective standard of what was reasonable under the circumstances at the time the alleged violation occurred rather than in hindsight. *Schinkel v. Board of Fire and Police Comm'n of Village of Algonquin*, 262 Ill. App. 3d 310, 323 (1994).

¶ 26 On review, we must evaluate whether the circuit court's decision was "informed, was based on valid reasoning, and follows logically from the facts." *Deutsche Bank National Trust Co. v. Ivicic*, 2015 IL App (2d) 140970, ¶ 25. The court is required under Rule 137 to "set forth with specificity the reasons and basis of any sanction *** either in the judgment order itself or in a separate written order." Ill. S. Ct. R. 137(d) (eff. Jan. 1, 2018). An appellate court may only affirm the imposition of sanctions based upon the reasons specified by the trial court. *US Bank Trust, N.A. as Trustee for LSF11 Master Participation Trust v. Burnett*, 2021 IL App (1st) 210135, ¶ 39. We give considerable deference to the trial court's decision to impose sanctions, and we will not reverse that decision absent an abuse of discretion. *Burrows v. Pick*, 306 Ill. App. 3d 1048, 1051 (1999). A court abuses its discretion in imposing sanctions only where no reasonable person would take the view adopted by it. *In re Marriage of LaRocque*, 2018 IL App (2d) 160973, ¶ 111.

¶ 27 Here, the circuit court acted within its discretion in granting Zurich's motion for Rule 137 sanctions because the complaint was not objectively reasonable under the circumstances at the time it was filed. As noted by the court in entering its sanctions order, the complaint lacked any

factual or legal basis to overcome Zurich's affirmative defenses that the claims included in the complaint were barred by the statute of limitations and *res judicata*. See *Wren v. Feeney*, 176 Ill. App. 3d 364 (1988) (holding that dismissal of a medical malpractice complaint based on the statute of limitations was a proper ground to impose sanctions because the complaint was not "warranted by existing law" and therefore "should not have been commenced"). These affirmative defenses were insurmountable under the facts of this case, and that conclusion would have been apparent to anyone who conducted a reasonable investigation into the timeline of the facts alleged in the complaint and the extensive litigation history between Zurich and MAP.

¶ 28    As noted, appellants initiated this matter on July 30, 2020, when they filed a three-count verified complaint against Zurich sounding in common law fraud, which has a five-year statute of limitations. See 735 ILCS 5/13-205 (West 2018); *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 413 (2009); *Gillespie Community Unit School District No. 7, Macoupin County v. Wight & Co.*, 2014 IL 115330, ¶ 51; and *Parille*, 2016 IL App (2d) 150286, ¶ 13. Count I alleged that, between 2001 and 2008, Zurich intentionally failed to file the Terms and Conditions (which appellants alleged was the sole source of the duty to arbitrate disputes between Zurich and MAP) with the Department and, as a result, it "obtained an advantage [over MAP] that the [Department] would have denied Zurich—the right to an arbitration and the avoidance of facing potential plaintiffs in a court of law." Count II alleged that, in 2008, Zurich's outside counsel threatened and intimidated Prate until he signed the promissory note on behalf of MAP. Count III asserted that Zurich, between 2001 and 2008, "used the late signing of [the] Terms and Conditions to force Prate to accept the arbitration provision." Appellants alleged that Zurich annually presented the document for Prate's signature after the insurance coverage for the particular policy year was already in effect, and that this late presentation of the document deprived Prate of the ability to reject the

Terms and Conditions out of fear that he would be left without workers' compensation insurance if he refused to sign it. Each of the counts sought damages in excess of $10 million.

¶ 29    Critically, all of the facts pertinent to the three counts were alleged to have occurred between March 2001, when MAP first purchased workers' compensation insurance from Zurich, and July 23, 2013, when the Cook County circuit court entered a final judgment confirming the arbitration award in favor of Zurich. No appeal of the judgment confirming the arbitration award was filed. Thus, the most recent occurrence even mentioned in the complaint predated its filing by more than seven years, and appellants made no argument upon which one could reasonably conclude that it was filed within five years of any action taken by Zurich—much less any action that was alleged to be fraudulent. Even assuming that Zurich secured the judgment confirming the arbitration award through fraud, the matter concluded more than seven years before appellants initiated this matter. Appellants also made no argument, either in the circuit court or in this appeal, that the judgment is void such that it may be collaterally attacked at any time. See *People v. Castleberry*, 2015 IL 116916, ¶ 11.

¶ 30    Zurich moved to dismiss the complaint on the ground that all three counts were barred by the five-year statute of limitations applicable to fraud, among other reasons. In response, appellants sought to invoke the common law "discovery rule" as to Count I and argued that the limitations period should be tolled until January 2020, which is when Prate "discovered" that Zurich had not filed the Terms and Conditions relative to MAP's workers' compensation insurance policies that were in place between 2001 and 2008.[4]

---

[4]Appellants made no argument that the discovery rule should toll the limitations period for count II (which alleged Zurich's counsel "threaten[ed] and intimidate[d]" Prate until he signed

¶ 31    A cause of action "accrues" for purposes of determining when the statute of limitations begins to run when facts exist that authorize the bringing of a cause of action. *Henderson Square Condominium Association v. LAB Townhomes*, LLC, 2015 IL 118139, ¶ 52. However, courts in Illinois recognize the "discovery rule," which postpones the start of the limitations period until the plaintiff knows or reasonably should know that he or she has been injured and that the injury was wrongfully caused. *Id.*; *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415 (1981). This judicially created rule is intended "to prevent the unduly harsh result of a statute of limitations barring a plaintiff's lawsuit before she was even aware that she was injured." *Hawkins v. Nalick*, 2012 IL App (5th) 110553, ¶ 15. See also *Hermitage Corp. v. Contractors Adjustment Co.,* 166 Ill. 2d 72, 77-78 (1995) (stating that the discovery rule avoids the mechanical application of a statute of limitations where potential plaintiffs would be barred from suit even before they become aware of the injury).

¶ 32    As noted, appellants argued that dismissal of the complaint on timeliness grounds was unwarranted because Prate "first found out only recently about Zurich's fraudulent failure to [file]" in January 2020, following several FOIA requests directed to the Department that were initiated by an insurance auditor that he engaged for that purpose several months earlier. In essence, their

_____

[the] promissory note) or count III (which alleged Zurich "used the late signing of Terms and Conditions to force Prate to accept the arbitration provision"). In fact, based on our review of the response, it appears appellants made no argument that counts II and III were timely. Instead, they conceded that the complaint was "perhaps less artfully" presented than it should have been, but they stated that, "at the court's leave," they would replead to "include MAP and PI *** and simplify the pleadings to a single count of fraud."

argument before the circuit court was that the 5-year statute of limitations should be tolled because they did not investigate the public records of the Department relative to the insurance policies Prate purchased from Zurich until after the limitations period had already run. This argument was patently meritless.

¶ 33    Foremost, the argument focused on when Prate gained *actual* knowledge of the purported non-filing of the Terms and Conditions. As we have already stated, application of the discovery rule does not exclusively hinge on when a potential plaintiff *actually* learns of the injury and that it was wrongfully caused. Rather, the discovery rule incorporates a constructive knowledge component, in that the limitations period commences when a person knows *or reasonably should know* of the injury. (Emphasis added.) *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 20. At that point, "the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed." *One Fish Two Fish, LLC v. Struif*, 2021 IL App (1st) 191441, ¶ 45 (quoting *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171 (1981). "The rule encourages diligent investigation by potential plaintiffs without foreclosing any claims about which the plaintiffs could not have been aware." *Scottsdale Insurance Co. v. Lakeside Community Committee*, 2016 IL App (1st) 141845, ¶ 25. The point at which the plaintiff knew or should have known of both the injury and its wrongful cause is generally a question of fact, but it becomes a question of law where the facts are undisputed and show that only one conclusion can be drawn. *Resgaitis v. Waterstone Financial Group, Inc.*, 2013 IL App (2d) 111112, ¶ 30.

¶ 34    Under this standard, it is immaterial that Prate "first found out only recently about Zurich's fraudulent failure to disclose to the [Department] the arbitration provision." It has long been held in Illinois that parties are deemed to be aware, and thus have constructive knowledge, of information contained in the public record. *Wheeler v. McEldowney*, 60 Ill. 358, 360 (1871)

(holding that recording a bond for a deed on commercial property constituted notice to the public). See also *Tillman v. Pritzker*, 2021 IL 126387, ¶ 27 ("[i]t is well established that matters of public record constitute constructive notice to a plaintiff for purposes of applying laches"); *Ropiy v. Hernandez*, 363 Ill. App. 3d 47, 54 (2005) ("[w]here no affirmative acts of deception have occurred, 'matters which are public record serve as constructive notice.' " (quoting *De Kalb Bank v. Purdy*, 166 Ill. App. 3d 709, 725 (1988)); *Ashby v. Pinnow*, 2020 IL App (2d) 190765, ¶ 36 (recording of deeds with county recorder put plaintiff on notice of the deeds' existence); and *Hachem v. Chicago Title Insurance Co.*, 2015 IL App (1st) 143188, ¶ 27 (stating "where an instrument of conveyance or a mortgage is recorded in the appropriate public office, the public record provides constructive notice to the whole world"). A plaintiff may be charged with the *absence* of information contained in a public record, *even if they fail to investigate*. See *Diotallevi v. Diotallevi*, 2013 IL App (2d) 111297, ¶ 35 (finding claims barred due to statute of limitations where property titles and corporate records were matters of public record). Put simply, Prate had constructive notice of the Department's public filings relative to his policies with Zurich by, at the latest, 2010, when Zurich moved to compel arbitration.

¶ 35    In their responses to the motion to dismiss, appellants offered no serious argument that Zurich's alleged "failure to file" could not have been discovered any earlier than January 2020. Instead, they asserted that insurance policies filed with the Department are "not for public consumption," and they disputed that the relevant documents could have been retrieved with ease from the Department, because "[o]nly an insurance expert would know how to file a FOIA request with the Department *** and where to file it." Both arguments were entirely baseless. Subject to certain exceptions that appellants did not argue were applicable, the Illinois Insurance Code expressly provides that the Department "shall be a public office" and its records "accessible to the

inspection of the public." 215 ILCS 5/404(1)(a) (West 2020). Additionally, appellants cited no support for an "expert exception" to the constructive notice aspect of the discovery rule, and, even if they had, the assistance of an expert to retrieve public records from the Department would have been unnecessary (see *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 416 (2006) (stating the purpose of FOIA is "to provide the public with easy access to government information")), especially for a sophisticated businessperson such as Prate or his counsel, Saternus.

¶ 36    As a last-ditch effort to buttress the argument that the claim could not have reasonably been discovered any earlier, appellants underscored that Prate's counsel in the 2011 Lake County suit did not raise the "fraudulent failure to file" issue, despite having previously represented businesses against Zurich in arbitration. If anything, the 2011 Lake County litigation was yet another missed opportunity for Prate to have "discovered" his new theory to challenge the arbitration within the limitations period. At that point, Prate had actual knowledge of his contractual duty to arbitrate no later than January 2012, which is when he agreed to dismiss the 2011 Lake County litigation in order to allow MAP and Zurich to arbitrate the payment dispute. Between 2010 (when Zurich demanded arbitration) and 2013 (when the Cook County circuit court entered a final judgment confirming the arbitration award), it was incumbent upon Prate to investigate the circumstances of Zurich's claim and to marshal all the relevant facts, evidence, and the law to challenge those proceedings. That appellants devised a new theory in January 2020, when nothing prohibited the theory from being raised during any of the prior proceedings, was plainly insufficient to make a colorable claim to unwind the arbitration that was resolved seven years prior.

¶ 37    In addition to the discovery rule, appellants also sought to avoid dismissal of the complaint by arguing (for the first time) in their surreply that the complaint was timely under section 13-207 of the Code. Appellants reasoned that the complaint was filed within the limitations period for

fraud claims because it was filed within five years of the entry of the stipulated judgment in the Cook County action that had raised claims under the UFTA. Indeed, the entirety of the argument, as expressed in the surreply, was as follows:

> "The wrongful transfer case resulted in a stipulated judgment dated 9/10/15 [*sic*] which caused Mr. Prate to pay to Zurich the amount of at least $120,000 after 9/10/15. The case before the court was now filed 7/30/2020, within the statute of limitations of 735 ILCS 5/13-207."

Appellants did not reference the discovery rule in the surreply and, thus, it is unclear whether they intended to abandon that argument, or whether the argument premised on section 13-207 was meant to serve as an additional, alternative basis to support the complaint. Either way, this argument, too, was completely meritless.

¶ 38    Section 13-207 provides that, despite the expiration of the applicable statute of limitations period, counterclaims may be brought in a pending action as follows:

> "A defendant may plead a set-off or counterclaim barred by the statute of limitation or the statute of repose, while held and owned by him or her, to any action, the cause of which was owned by the plaintiff or person under whom he or she claims, before such set-off or counterclaim was so barred, and not otherwise." 735 ILCS 5/13-207 (West 2020).

The purpose of this section is to prevent plaintiffs from intentionally filing their claims as late as possible and thus deprive the defendants of a reasonable opportunity to file counterclaims within the original limitations period. *Village of Glendale Heights v. Glen Ayre Enterprises, Inc.*, 404 Ill. App. 3d 205, 211 (2010). See also *Patsis v. Zion-Benton Township High School, No. 126*, 234 Ill. App. 3d 232, 235 (1992) (observing that "[o]ne purpose of section 13-207 is to protect parties who have shorter limitations periods than their opponents"). It is a saving provision that "allows a

counterclaim to proceed despite the failure to comply with the appropriate statute of limitations period." *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 446 (2005). See also *Barragan v. Casco Design Corp*., 216 Ill. 2d 435, 441 (stating that untimely counterclaims may be brought in a pending action as provided in section 13-207).

¶ 39    Section 13-207 was facially inapplicable to the underlying complaint, and that inescapable conclusion should have been apparent to anyone who had simply taken the time to read its provisions. The clear and unambiguous language in section 13-207 makes clear that only a "*defendant* may plead a set-off or counterclaim" that would otherwise be barred by the statute of limitations in the same suit. Appellants make a number of statements in their briefs that appear aimed at casting Prate having occupied a defensive posture in the underlying proceedings. For instance, they assert that "[w]e are here because Zurich handed [Prate] a bill for $701,095," as well as that "[Saternus] zealously represented his client, who sought to defend himself from claims brought against him by Zurich." They also stated that "[Prate] already is the non-prevailing party in the arbitration matter and that is how this matter should conclude." Appellants fail to grasp that the dispute between Zurich and MAP *had* concluded in precisely that way in July 2013, when the circuit court of Cook County entered a final judgment confirming the arbitration award. Prate, of his own choosing, initiated these proceedings in July 2020 by filing a free-standing complaint sounding in fraud. Prate clearly was not a defendant, and the complaint could not seriously be viewed as a counterclaim to any proceeding, including Zurich's collection efforts relative to the confirmed arbitration award. Indeed, the circuit court pointed to appellants' erroneous reliance on section 13-207 in imposing sanctions, stating that it "applies only to counterclaims." In the court's view, appellants' erroneous reliance on section 13-207 demonstrated "the thinking and the analysis

and the lack of research and really vigorous vetting of the facts of this case and the appliable law to this case."

¶ 40     Tellingly, appellants make no effort to argue on appeal that their reliance on section 13-207 was an objectively reasonable position to take in response to Zurich's motion to dismiss. Rather, they attempt to minimize their reliance on this section of the Code by stating that it was not "integral to [Prate's] claims or his efforts to rebut the defenses raised by Zurich," and they stress that they "did not even argue the point at the hearing on the motion to dismiss." However, pursuant to Rule 137, by signing and filing the surreply to Zurich's motion to dismiss, Saternus certified that the document was, to the best of his knowledge, warranted by existing law, and appellants overlook the fact that Zurich expended resources and incurred legal fees in responding to this frivolous argument. Trial counsel's cavalier attitude in this regard further underscores our determination that the trial court's order imposing sanctions was not an abuse of discretion.

¶ 41     Appellants also should have known that the complaint was not warranted by existing law because it was clearly barred by the doctrine of *res judicata*. "The doctrine of *res judicata* provides that a final judgment [from] a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action [that involves] the same claim, demand, or cause of action." *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754, ¶ 73 (quoting *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001). These principles apply not only to questions that were actually litigated, but also to all questions which could have been raised or litigated. *Spiller v. Continental Tube Co.*, 95 Ill. 2d 423, 432 (1983). In order for the doctrine to apply and procedurally bar an action, three requirements must be satisfied: (1) a court of competent jurisdiction rendered a final judgment on the merits; (2) the cause of action in the present preceding

is the same as in the prior proceeding; and (3) the party asserting *res judicata* and the party against whom *res judicata* is asserted were parties to the prior action or were in privity with the parties to the prior action. *Kanfer v. Busey Trust Co.*, 2013 IL App (4th) 121144, ¶ 76.

¶ 42 Appellants, in the court below, effectively conceded two of the three elements of *res judicata*, namely that the 2013 circuit court judgment confirming the arbitration award was a final judgment on the merits by a court of competent jurisdiction, and that Prate was in privity with MAP. See *Pepper Construction*, 2016 IL App (1st) 142754, ¶ 73 (observing that arbitration awards generally have the same *res judicata* effect as court judgments); and *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 559-60 (2009) (observing that stockholders to closely held corporations are privies in proceedings touching the corporation for purposes of *res judicata*). Instead, appellants disputed only the second element, namely, that there was an identity of cause of action. Appellants highlighted that Zurich's alleged non-filing of the Terms and Conditions was not previously "pled in any case by Mr. Prate or his privies and was thus an "operative fact [that] is unique." The argument was not objectively reasonable because *res judicata* extends not only to questions that were actually litigated, but also to all questions which could have been raised or litigated. *Spiller*, 95 Ill. 2d at 432. Appellants were well aware of the arbitration proceeding at the time the complaint was filed, and they even attached the arbitration panel's written final opinion and award to the complaint. As we have already stated, when Zurich demanded arbitration in October 2010, it was on Prate to investigate all possible avenues for prevailing in those proceedings. That he only devised a new ground to challenge the arbitration proceedings ten years later, in 2020, is not an exception to the doctrine of *res judicata*.

¶ 43 Sanctions are appropriate for dismissals on grounds of *res judicata* where the case neither raises new issues nor issues that could not have been raised previously, and where the court finds

there was no conceivable basis for the action other than to waste the court's time, generate legal fees, and harass the defendant. *Singer v. Brookman*, 217 Ill. App. 3d 870, 880 (1991). In the court below, appellants failed to raise any issues that could not have been raised previously, and it found that the complaint was not warranted by existing law. Accordingly, the court's decision to impose sanctions on the basis that they knew or reasonably should have known that the complaint was barred by *res judicata* was not an abuse of discretion.

¶ 44    Because we agree with the ruling of the circuit court that Zurich's affirmative defenses of the statute of limitations and *res judicata* were so insurmountable that the complaint lacked any basis in law, we need not review appellants' argument that the lack of standing was an improper basis to award sanctions. We would be remiss, however, if we did not comment on the glaring incongruity in appellants' argument. On appeal, they assert that the "record is clear that there was an intention to add MAP and PI and the purportedly proper plaintiffs depending upon the trial court's ruling on the motion to dismiss." They further lament that, "[g]iven the state of the proceedings at the time of the dismissal and the trial court's ruling, the trial court's disposition of the motion cannot be said to stand in support of an award of sanctions on the issue of standing before [appellants] even had a chance to move to amend [the complaint] to add MAP and PI as plaintiffs." This assertion largely mirrored their response to Zurich's motion to dismiss, wherein appellants stated that they were "ready to amend [the] complaint to include MAP and PI as co-plaintiffs."

¶ 45    Counsel ignores that, on March 26, 2021, appellants moved to reconsider the ruling dismissing the complaint with prejudice. That motion included a request that the court "[g]rant *** leave to replead the instant complaint to insert Mr. Prate as the proper plaintiff and with such other amendments which may be needed." In other words, appellants requested leave to file an

amended complaint in order to replace Prate as plaintiff with himself. Appellants attached a proposed "Verified Amended Complaint" containing a single count of fraud based on the alleged "failure to file" issue. The circuit court, on August 17, 2021, denied the motion to reconsider and, by extension, the motion to file the amended complaint. Critically, the proposed amended complaint lists only Prate, individually, as plaintiff, just as in the original, dismissed complaint. Thus, the "standing issue" noted by the circuit court clearly remains. Moreover, appellants' abandonment of counts II and III in the proposed amended complaint serves as a tacit concession that those counts were not well grounded in fact and law, thus illustrating appellants' improper purpose in bringing the underlying action in the first place.

¶ 46    Appellants next argue that the sanctions order should be set aside because the circuit court's findings "contained little to no detail regarding the basis for the award," in contravention of Rule 137, which provides that a judge imposing sanctions "shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order." Ill. S. Ct. R. 137(d) (eff. Jan. 1, 2018).

¶ 47    Here, although the circuit court's September 21, 2021, written order did not detail the need to impose sanctions, it did state that "the motion for sanctions is granted for the reasons stated on the record." Thus, the court incorporated, by reference, the oral findings it made during the hearing on Zurich's motion, which was appropriate. See *Law Offices of Brendan R. Appel, LLC v. Georgia's Restaurant and Pancake House, Inc.*, 2021 IL App (1st) 192523, ¶ 79 ("[W]hen the order incorporates by reference a document that may be read that contains the trial court's reasoning, it would be sufficient"). In announcing its ruling, the court stated as follows:

> "First of all, the Court is not going to consider matters that occurred outside of the court proceedings. Even though they may be harassing or causing issues with the defendant

or defendant's counsel, the issue really before the Court is whether what happened in court with respect to the pleadings should merit sanctions, and activity outside of that is really not relevant to the Court's determination of that.

So I'm basing my ruling on the pleadings, the motion to dismiss with the exhibits that I reviewed, [and] the briefs that were accompanying the motion for sanctions.

And the Court finds that the motion for sanctions is well grounded. I don't think that there is any legal or factual basis to deal with the issue of the statute of limitations, *res judicata*[,] or the standing issue. There is no factual basis.

If the Court remembers correctly, part of the argument was that you avoid the statute of limitations based on 735 ILCS 5/13-207, which is something that applies only to counterclaims. That was the justification for this initially and that shows the thinking and the analysis and the lack of research and really vigorous vetting of the facts of this case and the applicable law to this case.

Despite the posture of this case, I mean, there was still persistence with respect to standing and there was no allegations that Mr. Prate had standing in this matter. I'm going to grant the motion for sanctions."

¶ 48    The above oral comments and findings were sufficient to satisfy the specificity requirement in Rule 137. The circuit court did not merely recite the pertinent language of the Rule in a conclusory manner. See *Bertuli v. Gaull*, 215 Ill. App. 3d 603, 606 (1991) (holding that the trial court failed to express its reasons for imposing sanctions, but rather, set forth only legal conclusions that parroted the Rule). Instead, it premised its sanctions order on appellants' lack of investigation into the factual and legal bases for the complaint, and it emphasized their erroneous reliance on section 13-207 of the Code, which facially had no application to the case, as an example

of the inadequate thought, research, and analysis that preceded the filing of the complaint. The court also specified that the complaint had no legal or factual basis to overcome any of Zurich's affirmative defenses, including the statute of limitations, *res judicata*, or standing. Although brief, these findings were, in our view, sufficient to satisfy the rule.

¶ 49 Finally, we note that appellants devote the bulk of their reply brief to arguing that the circuit court abused its discretion by entering sanctions in the full amount of Zurich's incurred legal fees, rather than limiting the award to those fees that related directly to the sanctionable conduct. Appellants assert that, based on a review of Zurich's itemized fees, "large swaths of activity [were unrelated] to the defenses that were the subject of the motion to dismiss." They emphasize that the court dismissed the complaint with prejudice based on the statute of limitations and the doctrine of *res judicata*, and they reason that the court therefore should have "apportion[ed] fees relating to the activity of asserting" those defenses, which they assert would have totaled just $5,064. This argument was not raised in appellants' opening brief, but instead was improperly raised for the first time in the reply brief. We therefore need not address it. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"). Forfeiture aside, we would find that the trial court did not abuse its discretion in entering a sanctions order in the full amount of Zurich's incurred legal fees. Rule 137 is penal in nature, and its provisions must be strictly construed. *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 15 (2009). Accordingly, the court is not obligated to review each and every component of an award that was imposed as a sanction against a party filing a frivolous lawsuit. *Garlick v. Bloomingdale Township*, 2018 IL App (2d) 171013, ¶ 53. See also *Riverdale Bank v. Papastratakos*, 266 Ill. App. 3d 31, 43 (1994) ("[t]he isolated focus on each reimbursable component part of preparation

and trial is not necessary where false allegations made without reasonable cause are determined to be the cornerstone of the entire baseless lawsuit"). Here, the court emphasized that a sanction limited to the fees associated with Zurich's motion to dismiss would be inadequate because "the complaint *** is barred by the statute of limitations that all the work that was done and was incurred was reasonable in addressing a complaint that should never have been filed." It also emphasized that appellants did not present merely one "frivolous count" in an otherwise potentially meritorious complaint, but rather, the "total complaint *** was barred." The circuit court, in light of these findings, could not have abused its discretion in entering a sanctions award in the full amount of Zurich's incurred fees.

¶ 50                              III. CONCLUSION

¶ 51    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 52    Affirmed.