# Illinois Official Reports

## Appellate Court

---

### *Diotallevi v. Diotallevi*, 2013 IL App (2d) 111297

---

| | |
|---|---|
| Appellate Court Caption | DONALD DIOTALLEVI, JOSEPHINE DIOTALLEVI, RICHARD DIOTALLEVI, CAMILLE DIOTALLEVI, and RONALD DIOTALLEVI, Plaintiffs-Appellants, v. DENNIS DIOTALLEVI, PAMELA DIOTALLEVI, CHICAGO TITLE AND TRUST COMPANY LAND TRUST 1106876, Dated February 10, 1999, and CHICAGO TITLE AND TRUST COMPANY LAND TRUST 1106788, Dated November 15, 1998, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-11-1297 |
| Filed<br>Rehearing denied | December 23, 2013<br>February 7, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiffs' second amended complaint to recover the money they provided to their brother and his former wife to acquire land and operate a business was properly dismissed as untimely, notwithstanding plaintiffs' arguments that the statute of limitations was either tolled or did not otherwise bar their claims, since the record showed plaintiffs provided defendants with money without obtaining any security for the advances, they failed to properly plead any fiduciary duty on defendants' part to repay the funds, there was no concealment of the transactions, and plaintiffs did not raise any argument that they should be allowed to replead their claims. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 10-CH-4552; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Robert G. Black, of Law Offices of Robert G. Black, of Naperville, and B.J. Farrell, of Law Offices of B.J. Farrell, P.C., of Woodridge, and Timothy M. Daw, of Schiller, DuCanto & Fleck LLP, of Wheaton, for appellants. |
|---|---|
| | Charles J. Corrigan, of Dommermuth, Cobine, West, Gensler, Philipchuck, Corrigan & Bernhard Ltd., of Naperville, for appellee Dennis Diotallevi. |
| | Frederick E. Roth, of Roth Law Firm, LLC, of Naperville, and Mary E. McSwain, of McSwain & Associates, P.C., of Wheaton, for appellee Pamela Diotallevi. |
| | John A. Lipinsky, of Coman & Anderson, P.C., of Lisle, for other appellees. |
| Panel | PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices McLaren and Hutchinson concurred in the judgment and opinion. |

## OPINION

¶ 1 This is a family dispute in which plaintiffs, Donald Diotallevi, Josephine Diotallevi, Richard Diotallevi, Camille Diotallevi, and Ronald Diotallevi, allege that defendants, Dennis Diotallevi and Pamela Diotallevi, failed to repay money received in the forms of loans and investments. Plaintiffs filed a second amended complaint alleging unjust enrichment, seeking a constructive trust, a resulting trust, and a declaratory judgment, and bringing shareholder derivative actions based on breach of fiduciary duty and constructive fraud. The trial court dismissed with prejudice the second amended complaint on the grounds that (1) plaintiffs failed to allege the existence and breach of a fiduciary duty owed by defendants and (2) even if defendants breached such a duty, plaintiffs' claims were untimely because defendants engaged in no concealment that would extend the five-year statute of limitations for contract actions (see 735 ILCS 5/13-205 (West 2010)). On appeal, plaintiffs argue that (1) the five-year limitations period of section 13-205 is not an "absolute bar" to their claims and (2) the second amended complaint states claims for constructive and resulting trusts, a claim for unjust enrichment, and shareholders' derivative claims. We affirm.

¶ 2

¶ 3     On August 12, 2010, Donald, Richard, Camille, Ronald, and their mother, Josephine, filed a complaint against the siblings' brother, Dennis, and his now-former wife, Pamela. Plaintiffs allege that they gave defendants money in the form of loans and investments so defendants could purchase certain property to run a business and that, after defendants divorced, defendants failed to repay the money. On March 17, 2011, plaintiffs electronically filed (e-filed) an amended complaint, which was involuntarily dismissed. The trial court granted plaintiffs leave to further amend their claims.

¶ 4     On August 5, 2011, plaintiffs filed a second amended complaint, which is the subject of this appeal. Plaintiffs alleged that, in December 1995, by the will of Oldrich Mikulik, Dennis inherited a right of first refusal to purchase a parcel of land in Morris, commonly referred to as the Tree Farm. Dennis also inherited a one-half interest in a parcel in Aurora, commonly known as the Saw Mill. Defendants lacked the funds to buy the Tree Farm or to buy the other one-half interest in the Saw Mill. According to plaintiffs, starting in 1998, plaintiffs made payments to Dennis in the form of loans and capital investments to buy the Tree Farm and to acquire the remaining one-half interest in the Saw Mill. On November 15, 1998, defendants placed the titles to the Tree Farm and the Saw Mill in two land trusts. Defendants held as joint tenants the beneficial interest and power of direction of the land trusts, without recognition of plaintiffs' payments.

¶ 5     In March 2000, Dennis allegedly created an entity known as Family Tree Nursery, Inc., to operate a business on the Tree Farm and the Saw Mill. Thereafter, Dennis received all of the income and losses. For a year, the parties discussed formalizing an agreement regarding plaintiffs' funds used to acquire the Tree Farm and the Saw Mill. Plaintiffs alleged that defendants signed a document called the "Family Tree Nursery Inc. Operating Agreement" on March 3, 2001. "To avoid costly legal expenses," Donald drafted the document, which was revised several times before defendants signed it.

¶ 6     In 2008, Donald allegedly made another cash infusion, and around that time he distributed to the parties a spreadsheet describing plaintiffs' payments to date. Donald sought to establish a "reasonable return of equity" and to "protect and return (as a minimum) the Family's original investment when the property [*sic*] are sold in the future."

¶ 7     In 2009, Pamela initiated a marriage dissolution proceeding against Dennis. Plaintiffs alleged that, throughout the proceedings, they expected defendants to acknowledge plaintiffs' interest in the properties. However, in an April 2010 pretrial memorandum, Pamela asserted that defendants owned 100% of the legal interest in the Tree Farm and the Saw Mill, without recognizing plaintiffs' payments. On July 6, 2010, plaintiffs petitioned to intervene in the dissolution proceeding, but the petition was denied. On July 29, 2010, the trial court entered the judgment of dissolution, finding that the purported operating agreement between plaintiffs and defendants did not encumber the Tree Farm or the Saw Mill for purposes of the marriage dissolution.

¶ 8     Plaintiffs began giving defendants money in 1998 but did not file their original complaint in this action until August 12, 2010. Pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)), Pamela filed a combined motion under sections

2-615 and 2-619 to dismiss the second amended complaint. Plaintiffs argued that Pamela's pretrial memorandum in the dissolution proceeding was the first indication that defendants would not "completely honor the operating agreement and all other statements and investments to date." Plaintiffs concluded that the five-year statute of limitations did not begin to run until April 2010 and that therefore their original complaint, filed on August 12, 2010, was timely.

¶ 9 The trial court granted the motion and dismissed the second amended complaint, concluding that plaintiffs' reliance on defendants to someday provide some indicia of ownership in the properties was not reasonable where plaintiffs did not adequately allege a fiduciary duty. The court noted that plaintiffs pleaded only the parties' familial relationship to establish a fiduciary duty. The court also stated that, even if there were a fiduciary duty and a breach of that duty, the claims would turn on the timing of such a breach. As the matters at issue were of public record, there could be no finding of concealment that would extend the five-year statute of limitations that applied to the claims. 735 ILCS 5/13-205, 13-215 (West 2010). Plaintiffs e-filed their notice of appeal in the circuit court on December 19, 2011, which was within 30 days of the final order.

¶ 10 II. ANALYSIS

¶ 11 A. Jurisdiction

¶ 12 After the notice of appeal was e-filed, we issued our decision in *VC&M, Ltd. v. Andrews*, 2012 IL App (2d) 110523, *rev'd*, 2013 IL 114445, in which we dismissed that appeal on the ground that the 18th Judicial Circuit's local rules barred the e-filing of a notice of appeal. *VC&M*, 2012 IL App (2d) 110523, ¶ 24.

¶ 13 On May 1, 2012, after we issued *VC&M*, plaintiffs filed a motion in this court for leave to allow the e-filed notice of appeal to stand as effective, or for leave to file a substitute notice of appeal *nunc pro tunc*. On May 14, 2012, Dennis filed a response to plaintiffs' motion, arguing that our decision in *VC&M* mandates dismissal of the appeal for lack of jurisdiction. We ordered the motion taken with the case.

¶ 14 The supreme court reversed our decision in *VC&M*. *VC&M, Ltd. v. Andrews*, 2013 IL 114445. Despite concluding that the version of the local rule in effect at the time prohibited e-filing the notice of appeal, the supreme court determined that the e-filed notice of appeal gave this court jurisdiction over the appeal. *VC&M*, 2013 IL 114445, ¶ 33. The court reasoned that the appellate court is not deprived of jurisdiction when an e-filed notice of appeal is filed in violation of local rules because (1) the deficiency in the e-filed notice of appeal is one of form and not of substance and (2) during the e-filing pilot project, the clerk of the court is required to create and maintain paper copies of all e-filings. *VC&M*, 2013 IL 114445, ¶ 33.

¶ 15 The e-filed notices of appeal in *VC&M* and this case were filed under the same version of the local rules of the 18th Judicial Circuit. Consistent with the supreme court's decision, we conclude that plaintiffs' e-filed notice of appeal, although improperly filed, is sufficient to confer jurisdiction, particularly because the circuit court was required to maintain a backup

- 4 -

paper copy in a parallel manual court file. See *VC&M*, 2013 IL 114445, ¶ 33. Accordingly, we grant plaintiffs' motion to allow the e-filed notice of appeal to stand as effective.

¶ 16                                    B. *Res Judicata* and Collateral Estoppel

¶ 17     On May 17, 2012, Pamela moved to dismiss the appeal on the ground that our disposition in defendants' marriage dissolution action (*In re Marriage of Diotallevi*, 2011 IL App (2d) 100857-U) already addressed the issues raised in plaintiffs' second amended complaint and therefore had preclusive *res judicata* or collateral estoppel effect on this appeal. See Ill. S. Ct. R. 361(h) (eff. Dec. 29, 2009). Plaintiffs respond that *res judicata* and collateral estoppel do not apply, because they were denied leave to intervene in the dissolution action and thus were barred from actually litigating the claims and issues raised in this action. We agree with plaintiffs.

¶ 18     Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). *Res judicata* bars not only what was actually decided in the first action, but also whatever could have been decided. *Hudson*, 228 Ill. 2d at 467. Three requirements must be satisfied for *res judicata* to apply: (1) the rendition of a final judgment on the merits by a court of competent jurisdiction; (2) the existence of an identity of cause of action; and (3) the parties or their privies are identical in both actions. *Hudson*, 228 Ill. 2d at 467.

¶ 19     Pamela argues that, in *Marriage of Diotallevi*, we held that any debts related to Dennis's businesses should be attributed to Dennis for purposes of distributing the marital estate; therefore, she asserts, "[t]here is no need for this court to revisit the issue of whether or not [plaintiffs have] an 'interest' in the title to the Saw Mill and Tree Farm properties." We disagree.

¶ 20     Plaintiffs correctly respond that, because the trial court denied their petition to intervene in defendants' marriage dissolution action, *res judicata* does not bar plaintiffs' claims here. Plaintiffs, having previously been denied intervention to present their claims asserted in this action, cannot now in fairness be barred on the ground that their claims could have been raised in the dissolution action. See *Inter-Insurance Exchange of the Chicago Motor Club v. Truck Insurance Exchange, Inc.*, 88 Ill. App. 3d 733, 736-37 (1980); *United Security Insurance Co. v. Hayman*, 80 Ill. App. 3d 309, 311 (1980); see also *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, AFL-CIO, Local 283 v. Scofield*, 382 U.S. 205 (1965) (if intervention is denied in a proceeding, the party so denied is not bound by the decision therein). Hence, *res judicata* does not apply to bar plaintiffs' claims in this action.

¶ 21     While *res judicata* bars subsequent actions involving identical causes of action, the related doctrine of collateral estoppel prevents relitigation of issues decided in earlier proceedings. *Dowrick v. Village of Downers Grove*, 362 Ill. App. 3d 512, 516 (2005). The requirements for application of collateral estoppel are: (1) the issue decided in the prior proceeding must be identical to the one in the current suit; (2) the prior adjudication must have been a final

judgment on the merits; and (3) the party against whom the estoppel is asserted must have been a party to, or must be in privity with a party to, the prior adjudication. *In re A.W.*, 231 Ill. 2d 92, 99 (2008).

¶ 22 Collateral estoppel applies only if an identical issue existed in the prior action and only to the extent that the point or question was *actually* litigated, not as to matters that *might* have been litigated. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390-91 (2001). Moreover, the decision on the issue must have been necessary for the judgment in the first litigation. *Talarico v. Dunlap*, 177 Ill. 2d 185, 191 (1997). Because plaintiffs were denied leave to intervene in the dissolution proceeding, Pamela cannot establish that any issue decided in that proceeding was actually litigated by plaintiffs. Therefore, collateral estoppel is not a bar to plaintiffs' claims in this action. We deny Pamela's motion to dismiss the appeal.

¶ 23                                    C. Involuntary Dismissal

¶ 24 Pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2012)), Pamela filed a combined motion under sections 2-615 and 2-619 to dismiss the second amended complaint. The trial court granted the motion and dismissed the second-amended complaint with prejudice.

¶ 25 Section 2-619.1 of the Code permits a party to file a motion to dismiss that combines a motion on the pleadings under section 2-615 and a motion for involuntary dismissal under section 2-619. 735 ILCS 5/2-619.1 (West 2012). A motion to dismiss a complaint pursuant to section 2-615 of the Code challenges the legal sufficiency of a complaint by alleging that it fails to state a claim on which relief can be granted. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 147 (2002). In contrast, a motion to dismiss filed pursuant to section 2-619 of the Code admits the legal sufficiency of the complaint, but raises a defense that allegedly defeats the complaint. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. Defendants cited section 2-619(a)(5) of the Code, which allows involuntary dismissal of an action that was not commenced within the time limited by law. 735 ILCS 5/2-619(a)(5) (West 2012). Defendants argued that plaintiffs' claims were time-barred because they failed to commence the action within the five-year limitations period set forth in section 13-205 of the Code.

¶ 26 When we review motions filed pursuant to sections 2-615 and 2-619 of the Code, we accept all well-pleaded facts as true as well as all reasonable inferences that arise from them. *Patrick Engineering*, 2012 IL 113148, ¶ 31. However, we will disregard all legal and factual conclusions in the complaint that are not supported by specific factual allegations. *Patrick Engineering*, 2012 IL 113148, ¶ 31. We review *de novo* a circuit court's decision on a motion to dismiss pursuant to section 2-615 or 2-619 of the Code. *Patrick Engineering*, 2012 IL 113148, ¶ 31.

¶ 27 Generally, a statute of limitations begins to run as soon as a person suffers injury or, in the case of contract-based actions, at the time of breach. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77 (1995). However, the discovery rule delays the commencement of the applicable statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused. *Hermitage*,

166 Ill. 2d at 77. Courts apply the rule on a case-by-case basis, balancing the increase in difficulty of proof that accompanies the passage of time against the hardship to the plaintiff who neither knew nor should have known of the existence of his right to sue. *Hermitage*, 166 Ill. 2d at 78.

¶ 28 Generally, determining the point at which the limitations period starts to run under the discovery rule is a question of fact. *Rasgaitis v. Waterstone Financial Group, Inc.*, 2013 IL App (2d) 111112, ¶ 30. However, the question becomes one of law for the court where the undisputed facts show that only one conclusion can be drawn. *Rasgaitis*, 2013 IL App (2d) 111112, ¶ 30 (citing *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981)).

¶ 29 Plaintiffs concede that the five-year limitations period set forth in section 13-205 ordinarily would apply to all of their claims. Section 13-205 provides that "actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205 (West 2012).

¶ 30 Plaintiffs contend that section 13-205 is not an "absolute bar" to their claims because (1) the cause of action did not accrue until Pamela indicated in defendants' marriage dissolution proceeding that defendants owned 100% of the Tree Farm and the Saw Mill, and (2) the limitations period was tolled because defendants fraudulently concealed their intent to retain plaintiffs' payments.

¶ 31 Defendants respond that, based on the allegations of the second amended complaint, plaintiffs' cause of action is untimely because the claims accrued when plaintiffs began giving defendants money in 1998 without taking any steps to secure repayment or an interest in the properties. At that time, Dennis used the money to purchase the Tree Farm and acquire the one-half interest in the Saw Mill that he did not already own. On November 15, 1998, defendants placed the title to the Tree Farm and the Saw Mill in two land trusts, holding as joint tenants the trusts' beneficial interest and power of direction, without recognition of plaintiffs' "loans and investments." In March 2000, Dennis allegedly created an entity known as Family Tree Nursery, Inc., to operate a business on the Tree Farm and the Saw Mill. Thereafter, Dennis received all of the income or losses.

¶ 32 The second amended complaint alleged that, for a year, the parties discussed formalizing an agreement regarding the funds used to acquire the properties. Plaintiffs alleged that defendants signed a document called the "Family Tree Nursery Inc. Operating Agreement" on March 3, 2001. "To avoid costly legal expenses," Donald drafted the document, which was revised several times before defendants signed it.

¶ 33 The document contains a hand-written notation of "equity," "investment," or "loan amount" next to each plaintiff's name, but no financial instrument was created. Plaintiffs alleged in the second amended complaint that, despite the creation of the operating agreement regarding the Tree Farm and Saw Mill, "Dennis and Pamela [did not] change the title to these assets."

¶ 34　　　According to plaintiffs, Pamela's pretrial memorandum in the dissolution proceeding was the first indication that defendants would not "completely honor the operating agreement and all other statements and investments to date." Plaintiffs conclude that the statute of limitations did not begin to run until April 2010 and that therefore their original complaint, filed on August 12, 2010, was timely. We disagree.

¶ 35　　　Plaintiffs' claims are based on defendants' alleged breach of the operating agreement in that they failed to modify the titles to the Tree Farm and the Saw Mill to reflect plaintiffs' interest. The trial court astutely pointed out that no stock in the Family Tree Nursery had ever been issued and that, in 2001, the corporate entity actually dissolved for a time. As alleged in the second amended complaint, the titles to the properties and the company's corporate status were matters of public record, and therefore plaintiffs knew or reasonably should have known by 2001 that they had been injured and that their injury was wrongfully caused. See *Hermitage*, 166 Ill. 2d at 77.

¶ 36　　　In a related argument, plaintiffs argue that, under the doctrine of "fraudulent concealment" set forth in section 13-215 of the Code, defendants fraudulently concealed the cause of action by remaining silent and not informing plaintiffs that they eventually would assert a 100% interest in the Tree Farm and the Saw Mill, and by refusing to recognize plaintiffs' payments used to acquire and operate the properties. Section 13-215 provides that "[i]f a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13-215 (West 2010).

¶ 37　　　A plaintiff seeking to apply section 13-215 to toll the statute of limitations must show that the defendant engaged in affirmative acts or representations designed to prevent discovery of the cause of action or to induce the plaintiff to delay filing his claim. *J.S. Riemer, Inc. v. Village of Orland Hills*, 2013 IL App (1st) 120106, ¶ 51. However, Illinois courts have declined to apply section 13-215 to toll the statute of limitations where the plaintiff discovered the fraudulent concealment, or should have discovered it through ordinary diligence, and a reasonable time remained within the limitations period. *J.S. Riemer, Inc.*, 2013 IL App (1st) 120106, ¶ 51. In this case, as has been discussed, plaintiffs knew or should have known within the limitations period that defendants had taken no binding action in recognition of plaintiffs' interest in the Tree Farm and the Saw Mill.

¶ 38　　　Plaintiffs nevertheless argue that the parties' familial relationship imposed a fiduciary duty on defendants because the "kinship and trust [that] family members placed upon Dennis and his then-wife trumps the properties being placed in land trusts." Between persons sustaining a fiduciary or other confidential relationship, the person occupying the relation of fiduciary or of confidence owes a duty to reveal the facts to the other party, and his silence when he ought to speak, or his failure to disclose what he ought to disclose, is as much a fraud at law as an affirmative false representation or act. Mere silence on his part as to a cause of action, the facts giving rise to which it was his duty to disclose, amounts to a fraudulent concealment. *Hagney v. Lopeman*, 147 Ill. 2d 458, 463 (1992).

- 8 -

¶ 39        In advocating the existence of a fiduciary relationship, plaintiffs rely on *Frederickson v. Blumenthal*, 271 Ill. App. 3d 738 (1995), where the defendant's aunt deposited money into a savings account in 1963 and asked the defendant to hold the money for her under his name. The defendant did so from 1963 until 1988, when his aunt died. The defendant refused to release the funds to her estate, and as administrator of the estate the plaintiff sued for a constructive trust on the funds. *Frederickson*, 271 Ill. App. 3d at 739-40. The defendant argued that the suit was untimely, because it was filed more than 25 years after the money was first deposited in the account. The appellate court applied the discovery rule and affirmed the imposition of the constructive trust, holding that "neither [the decedent] nor the plaintiff had any reason to suspect the defendant was acting against their interests until demand was made and refused ***." *Frederickson*, 271 Ill. App. 3d at 742-43.

¶ 40        The relationship between the defendant and his aunt in *Frederickson* was familial like plaintiffs' relationship with defendants in this case, but the similarities end there. In *Frederickson*, the statute of limitations was tolled because the defendant followed his aunt's directions until she died and he refused to release the funds to her estate. For more than 25 years, he held the money for her under his name, which is precisely what she asked him to do. The defendant's conduct in following his aunt's directive, not the parties' familial relationship, was the basis for tolling the statute of limitations. In contrast, defendants in this case deliberately and openly acted against plaintiffs' interests as early as 2001, when they signed the operating agreement but left undisturbed the land trusts, without recognition of plaintiffs' payments.

¶ 41        We agree with the trial court that plaintiffs' claims are based on their reliance on defendants to someday provide some *indicia* of ownership in the properties, but that plaintiffs' reliance was not reasonable where they did not adequately allege a fiduciary duty. The facts in the second amended complaint did not establish that the relationship between the parties was anything but an arm's-length contractual relationship. See *Teachers Insurance & Annuity Ass'n of America v. La Salle National Bank*, 295 Ill. App. 3d 61, 71 (1998) (normal trust between contracting parties does not, by itself, turn a formal contractual relationship into a fiduciary relationship).

¶ 42        In their reply brief, plaintiffs change their argument, asserting that their cause of action was simply one to recover repayment of a loan. Plaintiffs reiterate their claim that defendants' marriage dissolution proceeding was when they first learned that defendants did not intend to repay the loan; and therefore, they assert, the second amended complaint was filed well before the five-year statute of limitations expired. Our analysis applies regardless of whether plaintiffs' payments are characterized as loans or investments.

¶ 43                                    III. CONCLUSION

¶ 44        The trial court did not err in dismissing the second amended complaint, because the claims are time-barred. Plaintiffs do not dispute that the five-year statute of limitations applies to all their claims. The statute of limitations was not tolled where the second amended complaint failed to adequately plead a fiduciary duty, and there was no concealment where the allegedly concealed matters were of public record. Finally, plaintiffs do not assert that they should be

allowed to replead their claims. For the reasons stated, we hold that the trial court did not err in involuntarily dismissing with prejudice plaintiffs' second amended complaint.

¶ 45          Affirmed.