2026 IL App (1st) 231664-U

FOURTH DIVISION
Order filed: May 14, 2026

Nos. 1-23-1664, 1-23-2377 (cons.)

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| MARK RODER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant and Cross-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2023 L 000321 |
| | ) | |
| EQUITY ONE INVESTMENT FUND, | ) | Honorable |
| | ) | John J. Curry, Jr., |
| Defendant-Appellee and Cross-Appellant. | ) | Judge, presiding. |

_____

JUSTICE QUISH delivered the judgment of the court.
Presiding Justice Navarro and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court's order granting defendant's motion to dismiss under section 2-619(a)(5) is affirmed, as the plaintiff should have known of his alleged injury more than five years before he filed his complaint, and therefore, the complaint was untimely. The circuit court did not abuse its discretion in denying the parties' cross-motions for sanctions.

¶ 2    Plaintiff Mark Roder ("Roder") and defendant Equity One Investment Fund ("Equity One") each appeal from several orders of the circuit court of Cook County in these consolidated appeals. Roder appeals from the circuit court's order granting Equity One's motion to dismiss

Roder's complaint under section 2-619(a)(5) of the Code of Civil Procedure ("Code"). 735 ILCS 5/2-619(a)(5) (West 2024). Both parties appeal from the circuit court's orders denying the parties' cross-motions for sanctions. For the following reasons, we affirm the orders of the circuit court.

¶ 3       I.   BACKGROUND

¶ 4       The following background is taken from Roder's complaint and its attachments. This matter concerns unpaid property taxes for a residential property located on Sunnyside Avenue in Brookfield, Illinois (hereinafter, "the property"). The property is held in a land trust with Roder as the beneficial owner. Roder has resided at the property at all relevant times. In 2008, the Cook County Treasurer issued a special assessment tax on the property, which went unpaid and became delinquent. In 2009, Equity One, an experienced tax lien purchaser, purchased from the Cook County Treasurer the delinquent special assessment at a tax sale. As a result of the sale, Equity One held a tax lien on the property. Equity One made payments under the tax lien for the 2008 to 2011 tax years which, at that time, satisfied the delinquent property taxes.

¶ 5       In January 2012, Equity One filed a petition for a tax deed for the property in the circuit court of Cook County (No. 2012 COTD 0389), alleging that its right to redeem the tax lien would expire on July 16, 2012. See 35 ILCS 200/22-5 (West 2024). On July 12, 2012, Roder filed a petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. Roder listed Equity One as a secured creditor for the total amount of its tax lien and sent it notice of the bankruptcy proceeding. The bankruptcy trustee paid $35,000, the full amount of the tax lien, to Equity One between March and September 2013.

¶ 6       In December 2012, while Roder's bankruptcy case was pending, Equity One filed, in the 2012 COTD 0389 case, a petition for an order declaring the tax sale as a sale-in-error under section

21-310 of the Property Tax Code based on Roder's bankruptcy. See 35 ILCS 200/21-310(b)(1) (West 2024) (allowing a declaration that a tax lien sale was in error when, subsequent to the tax sale and prior to the issuance of a tax deed, the property owner files for bankruptcy). The petition for a sale-in-error was granted in January 2013, and the Cook County Treasurer issued a refund of $23,760.23 to Equity One, based on taxes that it paid under the lien. Roder alleged in his complaint that he was unaware that Equity One had demanded or received partial payments of the tax lien from the Treasurer as neither the bankruptcy trustee nor Roder were notified and Equity One concealed from Roder that it obtained the refund. Equity One collected additional refund payments from the Treasurer in 2014 and 2015, totaling $7,505.10.

¶ 7    As a result of the Treasurer declaring the tax sale to be in error and sending a refund to Equity One, the property's taxes for the 2008 to 2011 tax years that were previously paid by Equity One under the tax lien became delinquent once again. Roder alleged that he was not aware that the taxes were delinquent until early 2020 because he believed that the payment of $35,000 from the bankruptcy trustee to Equity One satisfied the property's 2008 to 2011 taxes.

¶ 8    After investigating in 2020-2021, on October 4, 2021, Roder's counsel contacted Equity One, which confirmed through its manager John Bridge that it received both monies. Roder filed his complaint and jury demand on January 11, 2023, alleging that Equity One knowingly concealed that it took both a refund from the Cook County Treasurer and payment from the bankruptcy trustee, causing Roder to believe that his tax obligation was satisfied. The complaint alleged that Roder incurred substantial tax penalties and interest due to the unpaid taxes and alleged four claims: (1) fraudulent concealment; (2) fraudulent misrepresentation; (3) common law fraud; and in the alternative, (4) promissory estoppel. Roder sought damages of $140,000 plus interest,

attorney's fees and punitive damages. In his attached affidavit, Roder stated that in early 2020, he "first learned that the 2008 through 2011 special assessment and general taxes" that he had paid in full for the secured claim in bankruptcy had been sold to a subsequent tax buyer when his sister advised him of a subsequent 2015 tax sale for the same tax years he believed were paid.

¶ 9 Equity One filed a combined motion to dismiss the complaint under section 2-619.1 of the Code. 735 ILCS 5/2-619.1 (West 2024). Relevant to this appeal, Equity One argued that Roder's complaint was barred by the applicable statute of limitations under section 2-619(a)(5). 735 ILCS 5/2-619(a)(5) (West 2024). Equity One asserted that the events giving rise to Roder's alleged injury occurred between 2012 and 2015 and argued that, under section 13-205 of the Code (735 ILCS 5/13-205 (West 2024)), Roder failed to bring his action within five years of his alleged injury. It argued that Roder should have been on notice of his potential claim through numerous public records about the property long before his alleged actual discovery of his injury in 2020.

¶ 10 Attached to Equity One's motion to dismiss were Cook County tax records of the property from 2008 to 2011. These records bear a stamp of the Cook County Clerk's office, certifying that they are true and accurate copies of records of the Cook County Clerk, dated March 22, 2023. It also attached affidavits demonstrating that, in April 2012, Roder was personally served by the Sheriff's Office of Cook County with Equity One's complaint and summons in its tax deed proceeding, No. 2012 COTD 0389. Roder moved to strike the exhibits attached to Equity One's motion, arguing that Equity One failed to comply with Supreme Court Rule 191(a) (eff. Jan. 4, 2013) by failing to attach an affidavit.

¶ 11 At the hearing, Equity One argued that Roder should have been aware that the 2008 to 2011 taxes were delinquent by at least 2017, when delinquent taxes for the property were sold

again and Roder received notice of that sale. Roder responded that the issue of when he should have discovered his injury was a question of fact for the jury. At the close of the hearing, the circuit court requested supplemental briefing on the issues of (1) when Roder received notice that delinquent taxes for the 2008 to 2011 tax years were sold again; (2) whether the jury was required to make the determination of when Roder had notice, or if the court could make that determination; and (3) whether the court could take judicial notice of county records showing that notice was sent to the property in 2017. The court stated that it would treat the section 2-619 motion to dismiss as a summary judgment motion and would allow the parties to present whatever evidence they had. Roder did not object to this procedure. The court also denied Roder's motion to strike the exhibits.

¶ 12    In Roder's supplemental brief, he argued that (1) Equity One was estopped from asserting a statute of limitations defense because any delay was "induced by Equity One's fraudulent actions" and (2) there was a genuine issue of fact regarding when Roder knew or should have known that Equity One caused his alleged injury that needed to be resolved by a jury. Roder argued that notices sent by certified mail to Vera Juna[1] at the property were not sufficient to show Roder received notice that the 2008 to 2011 taxes were delinquent. Roder stated that the court's decision to treat Equity One's section 2-619 motion as a motion for summary judgment presented "apparent prejudice" to him, but he did not explicitly object to the court's procedure.

¶ 13    In Equity One's supplemental brief, it argued that Roder should have known, by at least December 2017, that the 2008 to 2011 taxes for the property were delinquent based on public records and notices sent to the property. It argued that Roder could not hide behind the fact that

---

[1] Many of the Cook County records attached to Equity One's filings refer to Vera Juna as the last known taxpayer for the property. Roder's complaint does not mention Juna or explain her relationship with the property. At the first hearing on Equity One's motion to dismiss, Roder's counsel confirmed that Juna was Roder's grandmother who previously owned the property and died in 2006.

notices were sent to his deceased grandmother when he was the beneficial owner and resident of the property. Equity One also cited the tax bills for 2012 to 2015, which were mailed to the property each year and contained a note that "taxes for prior years may be due," which also placed Roder on notice of the outstanding back taxes.

¶ 14    Equity One attached six exhibits to its supplemental brief, including a "Take Notice" dated August 3, 2017 stating that the property has been sold in April 2017 for delinquent taxes, including tax years 2008 to 2011, with a certified mail receipt showing it was mailed to Juna at the property on August 4, 2017.  These documents bore a stamp stating "This document is a Copy produced from the files of the Cook County Clerk's Office" which was signed and dated January 23, 2023. The response also included documents entitled "Cook County Real Estate Tax Warrant Information," from the tax years 2012 and 2014, both of which stated that the property had delinquent taxes starting in 2008. The documents bore a stamp certifying the record as "A TRUE AND ACCURATE COPY OF RECORDS HELD BY THE COOK COUNTY CLERK" and was signed and dated July 11, 2023.

¶ 15    Also attached is an email exchange between Equity One's counsel and the Cook County Treasurer's Freedom of Information Act ("FOIA") email address. The Treasurer's response contained a spreadsheet that showed messages included on tax bills sent to the property. According to the spreadsheet and email, tax bills for the property for the 2012 to 2015 tax years included a message stating that "records indicate taxes for prior years may be due." In the tax years 2016 and 2017, the bill included the note "2015 taxes were sold.  If you have not redeemed these taxes, call the Cook County Clerk at 312.603.5656."

¶ 16    The circuit court held a hearing after receiving the supplemental briefs and then granted Equity One's motion to dismiss under section 2-619(a)(5), finding that Equity One established that the county records it provided were reliable and thus, the court would take judicial notice of those records, including the spreadsheet sent by the Treasurer's FOIA officer. The circuit court found that it was inappropriate for Roder "to take the ostrich position" of taking no action on his taxes and then rely on that inaction to extend the statute of limitations. The court found that Roder was "obliged to follow his own affairs and … to be aware of the public record regarding his tax statuses for the property." The court observed that county records, specifically the spreadsheet sent by the Treasurer's FOIA email showing messages on tax bills for the property, reflected that the 2016 tax bill sent in March 2017 included a message that delinquent taxes for the property had been sold. The court held that Roder "reasonably should have known that there was an issue regarding nonpayment of the 2008 to 2011 taxes" as of March 1, 2017, the statute of limitations began to run no later than March 1, 2017, and the complaint was untimely since it was filed more than five years later. Roder filed a notice of appeal from this order.

¶ 17    Thereafter, Equity One filed a motion for Rule 137 sanctions against Roder and his counsel, arguing that, upon learning of the duplicate payment in 2021, Equity One's manager, John Bridge, offered to return to Roder the $35,000 it received from the bankruptcy trustee. Equity One argued that there was no arguable basis to believe that Roder could have recovered more than $35,000 in any lawsuit or that Roder was entitled to prejudgment interest. Equity One argued that, by refusing the offer of $35,000 and insisting on filing suit despite the statute of limitations issue, Roder's only possible purpose was to harass Equity One and needlessly cause it to incur legal fees, justifying sanctions.

¶ 18    Roder filed a response, a cross-motion for sanctions, and a motion to disqualify Equity One's counsel based on a conflict of interest. Roder argued his complaint had merit, suggested that the circuit court improperly dismissed it on statute of limitations grounds, and raised grievances with the conduct of Equity One's counsel in this case as well as other cases. Roder argued that Equity One's motion for sanctions was for an improper purpose to harass Roder. Roder further argued that, since he was seeking sanctions against Equity One's counsel, counsel's personal interests were at odds with Equity One's, creating a conflict of interest that required counsel's disqualification.

¶ 19    The circuit court denied the cross-motions for sanctions and the motion to disqualify Equity One's counsel. Both parties appealed this ruling.

¶ 20    Roder's initial appeal was assigned case number 1-23-1664. Equity One cross-appealed from the denial of sanctions in that case. Roder's notice of appeal from the denial of his motion for sanctions was assigned case number 1-23-2377. This court granted Roder's motion to consolidate both appeals.

¶ 21    II. ANALYSIS

¶ 22    A. Motion to Dismiss based on Statute of Limitations

¶ 23    We first address Roder's appeal of the circuit court's order granting Equity One's motion to dismiss under section 2-619(a)(5). Roder argues that the circuit court erred by (1) taking judicial notice of documents attached to Equity One's supplemental brief; (2) making factual findings regarding when Roder should have known of his injury when such a finding should have been reserved for a jury; (3) denying Roder's objections to the documents attached to Equity One's motion to dismiss and supplemental brief; and (4) considering Equity One's motion to dismiss as

a summary judgment motion, only to grant the motion to dismiss under section 2-619(a)(5). Equity One responds that Roder's procedural arguments are meritless, and the circuit court properly granted its motion to dismiss because Roder's claims were barred by the statute of limitations and the discovery rule did not apply.

¶ 24    A motion to dismiss under section 2-619(a)(5) asserts that the defendant is entitled to dismissal if the "action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2024). Under section 2-619, "[t]he parties may ask the court to consider the pleadings, as well as any affidavits and deposition evidence, and to take judicial notice of facts contained in public records where such notice will aid in the efficient disposition of the case." *Advocate Health and Hospitals Corp. v. Bank One, N.A.*, 348 Ill. App. 3d 755, 759 (2004). If a motion to dismiss is based on facts not apparent from the face of the complaint, the movant must support its motion with affidavits or other evidence. *Philadelphia Indem. Ins. Co v. Pace Suburban Bus Service*, 2016 IL App (1st) 151659, ¶ 13. The court must construe all such evidence in the light most favorable to the non-movant. *Id.* "An appeal from a section 2-619 dismissal is similar to an appeal following a grant of summary judgment, and both are subject to *de novo* review." *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 254 (2004). "In both cases, the reviewing court must determine whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether the dismissal is proper as a matter of law." *Id.*

¶ 25    Judicial Notice

¶ 26    We first address Roder's procedural and evidentiary arguments. Roder argues that the circuit court erred by taking judicial notice of documents attached to Equity One's supplemental

brief, specifically the Treasurer's spreadsheet showing messages included in tax bills mailed to the property. A court may take judicial notice of adjudicative facts at any stage of the proceeding when the fact is "not subject to reasonable dispute in that it is (1) generally known in the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Ill. R. Evid. 201 (eff. Jan. 1, 2011); *People v. Castillo*, 2022 IL 127894, ¶ 39. The circuit court may take judicial notice of public records in deciding a motion to dismiss under section 2-619. *Advocate Health and Hospitals Corp.*, 348 Ill. App. 3d at 759. The circuit court's decision on evidentiary matters, including whether to take judicial notice, is reviewed for an abuse of discretion. *In re S.M.*, 2015 IL App (3d) 140687, ¶ 13.

¶ 27     Roder argues that the spreadsheet showing the tax bills for the property was unverified and unsupported by affidavit. However, Roder cites no authority suggesting that a circuit court may only take judicial notice of public records if it has an affidavit verifying the records' authenticity. The spreadsheet at issue lists the Property Index Number used by the county, the name of the taxpayer and the mailing address for each tax year from 2010 to 2021. It contains a column titled "ImportantMessageText" which includes messages stating that "Records indicate taxes for prior years may be due" for several years' tax bills. The spreadsheet was attached to an email from the Treasurer's FOIA officer responding to an inquiry from Equity One's counsel. Here, the circuit court observed that the spreadsheet was a public record generated by the Treasurer and sent in response to a FOIA inquiry and thus was equally available to members of the public and they were reliable and accurate.  See *Village of Arlington Heights v. Anderson*, 2011 IL App (1st) 110748, ¶14 ("county treasurer reports are public records."). The response was sent from the Treasurer's FOIA email address, which supported the circuit court's conclusion that the records were genuine.

- 10 -

Given these circumstances, we find no abuse of discretion in the court's decision to take judicial notice of the contents of the Treasurer's spreadsheet.

¶ 28    Other Evidentiary and Procedural Arguments

¶ 29    Roder next argues that the circuit court erred by denying his objections to the documents attached to Equity One's motion to dismiss and supplemental brief based on Equity One's failure to include an affidavit that complied with Rule 191(a). However, his argument on this issue is a single conclusory sentence placed in the middle of his argument on judicial notice. As this argument is undeveloped, it is forfeited. Ill. Sup. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Robbins v. County Employees' and Officers' Annuity & Benefit Fund of Cook County*, 2021 IL App (1st) 192142, ¶ 51.  Forfeiture aside, materials of an evidentiary nature other than affidavits may be considered on a motion to dismiss.  *Advocate Health and Hospitals Corp.*, 348 Ill. App. 3d at 759; *Layden v. O'Donnell Callaghan, LLC*, 2025 IL App (2d) 240685-U, ¶ 32. An affidavit is not necessary to support a section 2-619 motion to dismiss where the grounds for dismissal appear on the face of the pleadings and in judicially noticed materials.  *Id.*

¶ 30    Roder's final procedural argument is that the circuit court improperly converted Equity One's motion to dismiss into a motion for summary judgment, then converted it back to a motion to dismiss after receiving the parties' supplemental briefs. Roder did not object either when the circuit court stated it would treat Equity One's motion to dismiss as a motion for summary judgment or when the court granted the motion under section 2-619.  Although Roder asserts that he did object, in the portion of the transcript cited, his counsel only disputed the foundation for records attached to Equity One's supplemental brief and did not object to the circuit court's procedure. Rather, counsel merely made a statement of counsel's recollection of how the court

was treating the motion. Because Roder failed to object to the circuit court's procedure, he has not preserved his argument for this court's review. *Hargrove v. Gerill Corp.*, 124 Ill. App. 3d 924, 930 (1984). Roder's failure to object distinguishes this case from the case he cites, *Premier Elec. Const. Co. v. La Salle Nat. Bank as Trustee under Trust No. 49475*, 115 Ill. App. 3d 638 (1983), where the plaintiff objected to the circuit court's procedure converting a motion to dismiss into a motion for summary judgment. See *Hargrove*, 124 Ill. App. 3d at 930 (distinguishing *Premier* on the same basis). Additionally, the court ultimately granted Equity One's motion under section 2-619, and Roder has not demonstrated that he was prejudiced solely because the court switched procedures.

¶ 31    Roder next argues that he "was never given the opportunity to file a response under section 2-619 procedure or to the new exhibits after filing his supplemental response based on the ordered summary judgment procedure." However, Roder fails to cite any page of the record where he asked to file another brief and was denied leave to do so.  Rather, the transcript shows that neither party objected to the court's request for, or schedule and timing of, supplemental briefs.  Thus, we reject Roder's argument.

¶ 32    Whether Roder's Complaint was Timely

¶ 33    We next turn to the ultimate issue of whether the circuit court properly granted Equity One's motion to dismiss under section 2-619(a)(5), finding Roder's complaint barred by the five-year statute of limitations. The statute of limitations for Roder's fraud and promissory estoppel claims is five years. 735 ILCS 5/13-205 (West 2024); *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 36 (fraud claims); *Chicago Limousine Service, Inc. v. City of Chicago*, 335 Ill. App. 3d 489, 498-99 (2002) (promissory estoppel claims). This period can be extended by the "discovery rule" which may "postpone the commencement of the relevant

statute of limitations until the injured plaintiff knows or reasonably should have known that he has been injured and that his injury was wrongfully caused." *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 361 (1995). Once a party knows or should know of their injury, "[a]t that point the burden is upon the injured person to inquire further as to the existence of a cause of action." *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981); *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶ 23.

¶ 34    Roder correctly notes that, because he filed a jury demand, the circuit court was prohibited from deciding disputed issues of material fact. See 735 ILCS 5/2-619(c) (West 2024) (section 2-619 motion shall be denied if a genuine issue of material fact exists and the party opposing the motion has filed a jury demand). While the determination of when a limitation period starts to run based on the discovery rule is generally a question of fact, it becomes a question of law when the undisputed facts show that only one conclusion can be drawn. *Rasgaitis v. Waterstone Financial Group, Inc.*, 2013 IL App (2d) 111112, ¶ 30. Therefore, the relevant inquiry is whether, based on the pleadings and evidence submitted by the parties, there is a disputed issue of material fact that Roder knew or should have known about his injury before January of 2018, five years before his complaint was filed. See *id.*; *Advocate Health and Hospitals Corp.*, 348 Ill. App. 3d at 759.

¶ 35    Equity One argues that the public records attached to its motion and supplemental brief support the circuit court's conclusion that Roder should have known of his injury before January 2018. Specifically, the Treasurer's records indicated that tax bills mailed to the property for tax years 2012 to 2015 included a message stating that "taxes for prior years may be due." Equity One also provided evidence through the Take Notices that notice was mailed to Roder's property in 2017 pursuant to section 22-5 of the Property Tax Code (35 ILCS 200/22-5 (West 2024)), which stated that the 2008 to 2011 taxes for the property were sold in a tax sale in 2017.

¶ 36    Equity One argues that, in light of the above evidence, a reasonable person would have inquired about the state of their property taxes. It cites *Skrodzki v. Sherman State Bank*, 348 Ill. 403, 408 (1932) for the proposition that a party can be charged with constructive notice of the contents of public records. Roder argues that he should not be charged with constructive notice based on public records when he "had no notice or reason to investigate further" based on his belief that the payments by the bankruptcy trustee to Equity One satisfied the property tax obligation for the 2008 to 2011 tax years.

¶ 37    We agree with Equity One that Roder should have been aware of his injury by 2017 at the latest based on the tax notices sent to his address and the public records indicating that the 2008 to 2011 taxes were once again delinquent. Illinois courts have repeatedly held that owners of property are deemed to be aware, and thus have constructive knowledge, of information that is in the public record, including public records relating to the property. *Skrodzki*, 348 Ill. at 408; see *Bear Valley Partners v. McDonald's Corp.*, 2024 IL App (2d) 230245-U, ¶ 78 (collecting cases).

¶ 38    In this case, Roder was the beneficial owner and resident of the property at all relevant times. As the owner, Roder was responsible for paying the property's taxes. 35 ILCS 200/9-175 (West 2024); see *People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479, 489 (1979) ("The key elements of ownership are control and the right to enjoy the benefits of the property."). Therefore, given the multiple notices sent to the property stating that the taxes were once again sold in 2017, Roder should have inquired into the status of the property's taxes by the end of 2017. As public records, including the tax bills mailed to the property, records of the 2012 COTD 0389 case, and the Take Notices regarding the subsequent tax sale mailed to Roder's address, indicated that the

2008 to 2011 taxes were again delinquent, such an inquiry would have resulted in the discovery of Roder's injury.

¶ 39     Additionally, the undisputed facts show that Roder was personally served with Equity One's 2012 tax deed proceeding in April 2012 and he was aware that Equity One prosecuted that case.  Thus, Roder was on notice of that lawsuit and his potential interest in it.  Roder is charged with examining the record and public court documents including these records from the 2012 COTD 0389 case, which would have alerted Roder as to the disposition of that proceeding. See *Skrodzki*, 348 Ill. at 408.  The undisputed facts also establish that, after Roder filed for bankruptcy, Equity One filed a sale in error petition within that same 2012 tax deed proceeding and received refunds in 2013-2014 from the Treasurer's office. Even though Equity One did not send notice of the sale in error petition to Roder, Equity One filed that petition in the same tax deed proceeding of which Roder already had actual notice.  Thus, Roder had knowledge of this proceeding, should have known then that Equity One received a double recovery and should have been aware of his injury as early as 2013. Although the trial court did not rely on this ground, this court can affirm on any ground present in the record.  *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995).

¶ 40     We find *Diotallevi v. Diotallevi*, 2013 IL App (2d) 111297, instructive. In *Diotallevi*, the plaintiffs alleged that they gave defendants money to purchase a property and run a business, and that defendants failed to repay the money after the defendants divorced each other. *Id.* ¶ 3. The complaint, filed in 2010, alleged that the plaintiffs made payments to one of the defendants starting in 1998 to purchase two properties, and continued to make payments to the defendants as late as 2008. *Id.* ¶¶ 3-6. The complaint alleged that the defendants breached a contractual promise to

modify the titles of the properties to reflect the plaintiffs' interest in the properties. *Id.* ¶ 35. The defendants placed title to the properties in two land trusts, holding as joint tenants the trusts' beneficial interest and power of direction, without recognition of the plaintiffs' loans and investments. *Id.* ¶ 31. In 2001, the parties signed an operating agreement, but the defendants did not change the title to the properties. *Id.* ¶¶ 31-32. This court found that "the titles to the properties *** were matters of public record, and therefore plaintiffs knew or reasonably should have known by 2001 that they had been injured and that their injury was wrongfully caused." *Id.* ¶ 35 (citing *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77 (1995)). This court concluded that the complaint, filed in 2010, was untimely. *Id.* ¶ 44.

¶ 41 Here, as in *Diotallevi*, information regarding Roder's alleged injury related to the 2008 to 2011 property taxes was readily available in several public records of the County Clerk, County Treasurer and circuit court of Cook County as well as tax bills mailed to Roder's residence as early as 2013. Roder was also aware of the 2012 tax deed proceeding, in which Equity One filed a petition to declare a sale in error and obtained a refund from the Treasurer. Therefore, Roder was provided with sufficient notice by 2017, at the very latest, such that, after a reasonable inquiry, he should have been aware that the 2008 to 2011 taxes for the property were again delinquent and that Equity One had received monies from both the County and Roder's bankruptcy trustee. See *Witherell*, 85 Ill. 2d at 156.

¶ 42 Roder argues that, under the discovery rule, he did not know of his injury until 2020 when his sister told him that the 2008 to 2011 taxes for the property were once again delinquent, and therefore, his complaint was timely filed in January 2023. "When a plaintiff uses the discovery rule to delay commencement of the statute of limitations, the plaintiff has the burden of proving

the date of discovery." *Hermitage Corp.*, 166 Ill. 2d at 85. While all well-pleaded facts are taken as true for purposes of evaluating a section 2-619 motion, the court is not required to accept the plaintiff's conclusion of law as to the date their injury was discovered. *Id.*

¶ 43　Roder alleged in his complaint that he did not discover that his 2008 to 2011 taxes had become delinquent until early 2020. While this allegation is accepted as true regarding when Roder had actual knowledge of his injury, it is not dispositive for purposes of determining when Roder should have known of his injury. *Id.* Roder argues that Equity One failed to meet its burden of production by presenting evidence that Roder should have known about his cause of action in order to shift the burden to Roder, and that Equity One improperly attempted to contest Roder's allegations in his complaint. However, Roder's complaint only pled when he had actual knowledge of the issue with taxes for the property, not when he should have known about the issue. Therefore, Equity One's motion to dismiss, which presented evidence showing that Roder should have been aware of the issue by 2017 at the latest based on public records, met its burden of production and shifted the burden to Roder. See *Ollins v. Karl*, 2022 IL App (1st) 220150, ¶ 54 (a "defendant bears the initial burden of demonstrating that the statute of limitations has expired before the burden is shifted to plaintiffs to prove that the limitations period had not expired on their claims.").

¶ 44　Roder argues that there is no evidence he received the tax bills and other documents relating to the property since they were addressed to his deceased grandmother. He also asserts that the messages appended to the tax bills stating that taxes "may be due" were not sufficient to show he should have known that taxes were due.

¶ 45　We agree with the circuit court's characterization that Roder cannot "take the ostrich position" by apparently ignoring tax bills mailed to his residence, then claim the statute of

limitations should be tolled because he was not aware of his injury. Roder was responsible for payment of taxes for the property regardless of whether or to whom tax bills were mailed. See 35 ILCS 200/20-15 (West 2024) (the failure of a taxpayer to receive a property tax bill does not affect the validity of any tax or the liability for the payment of any tax). The record contains certified records of two "Take Notices" that were sent to the property in 2017 and addressed to Juna. See 35 ILCS 200/22-10 (West 2024) (requiring notice of tax sale to "owners, occupants, and parties interested in the property" prior to redemption of tax deed). Therefore, upon receipt of these notices, which were mailed to his primary residence, Roder should have made a reasonable inquiry into the status of taxes for the property, which would have revealed that the 2008 to 2011 taxes had been sold once again. *Witherell*, 85 Ill. 2d at 156. We agree with the circuit court's conclusion that there is no genuine issue of material fact that Roder should have been aware that his 2008 to 2011 taxes were again delinquent by 2017, making his complaint filed on January 11, 2023 untimely.

¶ 46    Roder also argues that the statute of limitations should be tolled due to fraudulent concealment. A plaintiff may toll the statute of limitations based on fraudulent concealment by showing that the defendant engaged in affirmative acts or representations designed to prevent discovery of the plaintiff's cause of action. *J.S. Reimer, Inc. v. Village of Orland Hills*, 2013 IL App (1st) 120106, ¶ 51. However, fraudulent concealment does not toll the statute of limitations if the party could have discovered the alleged impropriety through a reasonable inquiry of public records. *Ashby v. Pinnow*, 2020 IL App (2d) 190765, ¶ 36. As we have already concluded that Roder should have discovered his alleged injury based on public records in 2017 showing that his 2008 to 2011 taxes were again delinquent, the doctrine of fraudulent concealment does not apply

to toll the statute of limitations in this case. See *Diotallevi*, 2013 IL App (2d) 111297, ¶¶ 36-37 (finding that fraudulent concealment did not toll the statute of limitations when public records should have alerted the plaintiffs to their injury).

¶ 47 Roder also argues that Equity One's alleged fraud "involved a continuing injury." He invokes the "continuing violation rule," where the limitations period does not begin "until the date of the last injury or the date the tortious acts cease." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 345 (2002). Roder did not raise this argument in the trial court and thus, it is forfeited. *Maka*, 2017 IL App (1st) 153010, ¶ 24. Even if it were properly preserved, it would be meritless. In his complaint, Roder did not allege that Equity One committed any wrongful act after 2015, when it accepted the last refund check from the Treasurer. While Roder argues that the limitations period was tolled because he suffered an ongoing injury based on the tax penalties and interest accruing on the unpaid taxes, our supreme court has rejected such an argument. See *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 279 (2003) ("A continuing violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation."). Therefore, we reject Roder's argument that the limitations period was tolled due to a continuing injury.

¶ 48 Roder lastly argues, in his reply brief, that Equity One is estopped from asserting a statute of limitations defense. However, Roder did not make this equitable estoppel argument in his opening brief and thus, it is forfeited. Ill. Sup. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Also, Roder pled no facts in his complaint to support the application of equitable estoppel here. Accordingly, this argument is forfeited. *Guarantee Trust Life Insurance Co. v. Platinum Supplemental Insurance, Inc.*, 2016 IL App (1st) 161612, ¶ 41.

¶ 49     As Roder should have been aware of his injury by 2017, at the very latest, and his complaint was filed more than five years later in January 2023, his complaint was untimely. 735 ILCS 5/13-215 (West 2024). Therefore, the circuit court properly granted Equity One's motion to dismiss under section 2-619(a)(5). 735 ILCS 5/2-619(a)(5) (West 2024).

¶ 50     B.  Cross-Motions for Sanctions

¶ 51     We next address the parties' cross-appeals of the circuit court's order denying their cross-motions for sanctions. Both parties brought their motions under Rule 137(a) which provides, in relevant part:

> "The signature of an attorney or party constitute a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information and belief formed by reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion or document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee."

Ill. Sup. Ct. R. 137(a) (eff. Jan. 1, 2018).

¶ 52     The decision of whether to impose sanctions under Rule 137 is committed to the discretion of the circuit court, and will not be overturned unless the court abuses its discretion. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998). "A court has abused its discretion when no reasonable person would agree with its decision." *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 16. The circuit court is not required to articulate its reasoning for denying sanctions. Ill. Sup. Ct. R. 137; *Id.* Rather, this court focuses on "whether the record provides an adequate basis

for upholding the circuit court's decision to deny sanctions, not on the circuit court's specific reasons for doing so." *Id.*

¶ 53    We cannot find that the circuit court abused its discretion in denying Equity One's motion for sanctions. Equity One argued that Roder had no reasonable basis to file suit other than harassment because he could not recover more than the $35,000 he was offered by Bridge. However, the record shows that Roder incurred over $140,000 in losses due to his (mistaken) belief that his payments to the bankruptcy trustee satisfied his property tax obligation for 2008 to 2011. It is also undisputed that Equity One took a "double payment" by accepting the refund from the Treasurer and the payments from the bankruptcy trustee. While we need not decide whether Roder could have successfully raised a claim for more than $35,000 in damages if the case had been timely filed, we cannot find that the circuit court abused its discretion in denying Equity One's motion for sanctions.

¶ 54    We also find no abuse of discretion in the court's decision to deny Roder's cross-motion for sanctions and motion to disqualify Equity One's counsel. Roder's cross-motion argued that Equity One's motion for sanctions was filed solely for the purpose of harassment. Equity One's motion for sanctions clearly outlined the basis for the sanctions it sought and included affidavits detailing that (1) Roder was offered a refund of the $35,000 paid by the bankruptcy trustee to Equity One prior to filing suit; and (2) attorneys for Roder and Equity One discussed the statute of limitations issue prior to Roder filing suit. While we do not find the circuit court abused its discretion in denying Equity One's motion for sanctions, we also do not find that the record supports Roder's assertion that the motion was brought for an improper purpose. Therefore, the circuit court did not abuse its discretion in denying Roder's cross-motion for sanctions.

¶ 55    For the foregoing reasons, we affirm the orders of the circuit court.

¶ 56    No. 1-23-1664, affirmed.
        No. 1-23-2377, affirmed.